The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and get their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. All right, we're happy to hear argument. And, um, Heidi V. Bondi and, um, Mr. Hashimoto. Good morning, Your Honor. Mr. Hashimoto. Erica Hashimoto. Are you going to introduce student counsel for us? Yes. Erica Hashimoto from Georgetown Law Center's Appellate Litigation Clinic, uh, representing Petitioner Kevin Hsieh. With the Court's permission, Cameron Bacar, a third-year student in the clinic, will be presenting argument on behalf of Mr. Hsieh. Well, we're delighted to have student counsel here and appreciate your assistance and that of student counsel. So step right on up. Thank you. Good morning, Your Honors, and may it please the Court. Mr. Kevin Hsieh, a longtime permanent resident of this country, is not removable because his conviction under 18 U.S.C. section 2422B is neither sexual abuse of a minor nor child abuse. Section 2422B was designed to criminalize a broad swath of conduct, including state statutory rape offenses that the Supreme Court has held are not sexual abuse of a minor, as well as adult-to-adult communications that do not involve a child at all. Section 2422B also requires only an intent to persuade, regardless of a defendant's intent to engage in any sexual activity. For each of these reasons, section 2422B penalizes a broader swath of conduct than both the generic definitions of sexual abuse of a minor and child abuse. First, section 2422B is not sexual abuse of a minor because it incorporates conduct prescribed by the same statutory rape law at issue in Escobar-Quintana that the Supreme Court held overbroad. Haven't we kind of already decided this case with our decisions in Thompson with respect to the sexual abuse of a minor and then the Cruz decision with the child abuse? I mean, we've got two precedents which seem highly relevant to the different prongs of the argument. So, isn't there a significant stare decisis element to what we're dealing with? No. First, regarding Thompson, section 2422B is a substantially different statute than the statute at issue in Thompson. First, because of the custodial relationship requirement in the statute in Thompson, and then also with the mens rea element that was present in Thompson that is not present in the lascivious intent, that is not present in section 2422B. This case, or this argument is a, or this statute is a much broader statute than the one in Thompson. And then in regarding Cruz, the holding in Escobar-Quintana explained that not all sexual activity with, consensual sexual activity between 16 and 17 year olds is inherently harmful. And the argument that we are making regarding child abuse is that in 1996 when Congress added the term into the INA, consensual sexual activity with a person 16 or older was not considered categorically harmful. Do I understand you to say that engaging a child in sexual activity is not child abuse? Is that what you're arguing? No, in the context of our Escobar-Quintana argument, or in the context of child abuse. Child abuse seems to be any activity which threatens harm to a child. And it seems to me if you take the conduct identified in 2422, both having a child engage in prostitution or having a child engage in sexual activity is child abuse. Having a child engage in sexual activity is harmful. The whole area of regulating sexual activity of children and harming children and child pornography starts with the presumption that having children be engaged in sexual activity by somebody else, whether by prostitution or some other activity, is child abuse. I'm puzzled why what exception to 2422 conduct wouldn't be thought of as child abuse. Congress added or created section 2420 to be a broad statute and to penalize a broad swath of conduct. But you're suggesting that the conduct of 2422 is not child abuse. It's broader than child abuse. It seems to me everything in 2422 is abusive in a child. Having a child be engaged in prostitution or having a child be engaged in sexual activity is prohibited by 2422. And it's prohibited because it's abusive of children, isn't it? Well, section 2420 to be can be applied broader than in those contexts. Well, give me a hypothetical where you would violate 2422 and it wouldn't constitute child abuse. One example would be that a defendant can violate section 2420 to be for solely engaging in adult to adult communications without any involvement of a minor. There are cases in this circuit and in other circuits where defendants have been convicted under section 2420 to be for communicating with law enforcement officers posing as parents or caretakers. Yeah, but those are attempt violations. I mean, they're undercover. They're posing as the child. But that doesn't mean the statute isn't violated because the statute covers not only the conduct but the attempt to do so. And that is disposed of in the attempt portion. But I'm trying to figure out what conduct that is prohibited. Set aside the undercover circumstance which catches the attempts. What conduct is not child abuse? Another example is the example presented in Escobar Cantana, where a 21 year old defendant could violate the California statute, statutory rape law for engaging in sexual intercourse with his 17 year old girlfriend. And because that activity is prohibited in California, that would be considered a violation because section 2420 to be incorporates. Statutory rape, including the California statutory rape law at issue in Escobar Cantana. It also has to ask yourself a general question. And that is, you know, what what does Congress want? They want someone convicted of an aggravated felony to be deportable. And it's hard to imagine, really, that somebody who is convicted of 2422, that coercion and enticement of a minor for purposes of sexual gratification. That's exactly the kind of individual that Congress would want removed from this country. I just don't see how we can say that enticement of a minor under a statute which requires knowing, persuasion, directed at somebody younger than 18 for the purposes of sexual gratification. It seems the 2422 conviction seems right in the heartland of sexual abuse of a minor and right at the heart of what Congress intended its statute, the kind of conduct it intended the statute to cover. It's just a practical application of congressional intent, is it not? I don't believe that the statute, Section 2422B, falls within the generic definition of sexual abuse of a minor because Congress intended it to be a broad statute and incorporating this fourth element that includes both state and federal offenses. And in the context of sexual abuse of a minor, the Estival-Quintana decision found that statutory rape in a state like California was overbroad compared to sexual abuse of a minor because consensual sexual activity between, for example, a 21-year-old defendant and a 17-year-old minor is not sexual abuse of a minor. Because the age of consent in that context, or in the context of sexual abuse of a minor is the age of sixteen. And the only addition for Section 2422B would be the interstate commerce element. And so that could be satisfied by a 21-year-old defendant communicating over text with a 17-year-old defendant. And also . . . Well, you know, the intent of Congress, when we look at a statute and says we can look at it ourselves and say sexual abuse is one way of doing it. But what is the issue in this case? Our determination, you're not here simply because of that. We could have just looked at this statute and said that's it and that would be the end of it. You wouldn't even be standing here. There's a deeper issue in this case as to why you're having this type of analysis as to whether this is a generic offense, whether it's overbroad, the whole bit. What is the issue? Why is it that that's the legal issue in the case? The factual matters you just discussed are really interesting. They're nice things to talk about. Well, how can that not be sexual abuse? That's not the issue in the case. We're dealing with the legal issue in the case. And how do you frame that? In the context of sexual abuse of a minor, and in this case is regarding the categorical approach, and what is the minimum conduct criminalized under Section 2422B? So break it down from the beginning. I mean, you're dealing with an immigration case. You're dealing with a removal situation. Why does this issue arise in this context? Because Section 2422B is such a broad statute. In addition to the . . . And why is that important? Because Section 2422B . . . Because it criminalizes more conduct than what falls under the generic definitions of sexual abuse of a minor. Well, why is that a big deal? Because obviously it doesn't make a big deal to some. If it's overbroad, it doesn't matter if it has that type. Why is it that . . . Clearly, you can look at it. Yes, it does encompass, but if it's overbroad, why is that important? Because if Section 2422B . . . If this Court finds that Section 2422B is overbroad compared to sexual abuse of a minor, then Mr. Shea would not be . . . It would not be considered a removable charge under the INA for Mr. Shea in the context of sexual abuse of a minor. Our other argument regarding sexual abuse of a minor is that defendants have been convicted under Section 2422B for adult-to-adult communications without any involvement of a minor. Sexual abuse of a minor, by contrast, requires the misuse or maltreatment of a minor to complete the act of abuse. Why is the mens rea in 2422B broader than that in the sexual abuse of a minor? Because Section 2422B only requires an intentional attempt to obtain a minor's assent, regardless of whether a defendant intends to engage in sexual activity. 2422 requires knowing persuasion, does it not? Yes. So why isn't that a satisfactory mens rea if it requires knowing persuasion? And as I say, not only knowing persuasion in the abstract, but knowing persuasion directed at someone younger than 18, and knowing persuasion for purposes of sexual gratification. And why can't that be a lawful predicate for the general, generic offense of sexual abuse of a minor? They seem to map onto each other, do they not? They map onto each other pretty doggone well. No, Your Honor, because this court in Angle clarified that the intent to persuade and the follow-up intent to perform the act after persuasion are, quote, separate and different intents. And this court further clarified that Congress expressly intended for Section 2422B to criminalize persuasion and the attempt to persuade, rather than the performance of sexual acts themselves. And in the context of sexual abuse of a minor, the intent to achieve sexual or to grant the intent to I'm just trying to apply a categorical approach here, which it seems to me is very problematic for purposes of your client. The Supreme Court instructs us not to go around imagining hypotheticals that might conceivably somehow broaden the predicate to a point where it can no longer serve as a predicate for the generic offense. But we would really have to stretch our imaginations in this case to get this conviction to be something substantially broader than the generic offense. And I think the Supreme Court has been pretty clear in telling us, don't do that. The categorical approach does not require that. Do you see the problem? No, Your Honor, because the intent to persuade is a broader intent than the intent to achieve sexual broadification. And if we look at this court's decision in Larios-Reyes, where the court found a Maryland statute overbroad, because a defendant could engage in conduct with a minor that was injurious, harmful, or offensive, but not necessarily sexually gratifying, a defendant can be convicted under Section 2422B without an intent to achieve sexual gratification. The only requirement is the intent to persuade. Thank you very much, Counsel. Wait a minute, let me see if my co-panelists have questions of you. Judge Neimeyer? No, I'm fine, thank you. Judge Winn, do you have further? We thank you very much, and you're going to have some rebuttal time as well, okay? Thank you, Your Honor. Ms. Glazer. Good morning, Your Honors. May it please the Court, my name is Sherry Glazer, and I'm here representing the United States Attorney General. Your Honors, 18 U.S.C. 2422 subsection B is a categorical match to this court's generic definition of sexual abuse of a minor, as well as a crime of child abuse. I'm happy to start. I have four points to make, if Your Honors don't mind, on the Esquivel-Quintana argument that Petitioner has raised. This court is bound by Thompson, and in Thompson, this court looked at Esquivel-Quintana and held that the holding in that case was very narrow, that it only applies to a sexual abuse of a minor offense when you're dealing with a strict liability statutory rape offense that criminalizes conduct solely based on the ages of the participants, and that's not what 2422B is. It's not a strict liability statutory rape offense. We can't look at the underlying offense. We've just got to approach it categorically, and it seemed to me that the combination of Thompson and Cruz pretty well . . . 90% of the question, but these two precedents, both with respect to child abuse and sexual abuse of a minor, these are 90% precedents. They answer it . . . Cruz probably answers it 100%, and Thompson answers it 90% because the whole question was whether the Esquivel-Quintana or what have you, how broadly that extended, and then Thompson says, no, that's limited to statutory rape, where we know that in instances of that, there's no men's ray. And then Thompson came along and said, well, you know, where you have a situation where it's clear that there is a men's ray, that that wasn't covered by Esquivel-Quintana or what have you. And the distinction seems to me between statutory rape and knowing persuasion of an abuse of a child, to be the distinction between those things, it seems rather dramatic. I agree with you, Your Honor, and I would point out to the extent that I believe I understand Petitioner's argument when he's trying to say that somehow 2422B incorporates statutory rape or encompasses it. It doesn't. It criminalizes that knowing persuasion, coercion, inducement, enticement of an individual believed to be under 18 to engage in prostitution or some sort of illegal sexual activity. But it is in no way dependent on a criminalization of statutory rape or of that illegal sexual activity. It is quite self-contained. And so that argument, just to point out for the Court, it really leads to nowhere. And to the extent that I believe it was in the reply that Petitioner cited people versus, I believe it's pronounced Ranch, R-A-N-S-C-H-T, to argue that all offenses have a men's ray, including these strict liability of statutory rape offenses. That was an equal protection case. And it was looking at 261.5 under the California Penal Code and Section 288. I cannot remember the subsection, but the argument was one, if you're convicted of one of the statutes, that you're required to register as a lifetime sex offender. And if you're convicted on the other one, you're not. That's all that that case addressed. And there's one line in the case that addresses an argument and distinguishes the two statutes and says that 261.5 is more general intent only because it does not require proof that 288 does that the defendant wanted to satisfy his own sexual desires or the sexual desires of the victim. It does not say, like Petitioner is trying to argue, that under 261.5 you have to prove that the defendant wanted to engage in sexual intercourse. That's just not what the case stands for at all. And I just wanted to point that out. But from the perspective of 2422B, there does seem to be an incorporation of those statutory rape laws, such as the ones that deal with this term illegal sexual activity. That would bring in the state laws that the Supreme Court has found that are abroad insofar as the height and age concept within it and the features of being a statutory rape basis where we are. Is there not a difference? And is it not incorporated within this? No, Your Honor, I respectfully disagree. I don't think it is because it doesn't matter for purposes of a conviction under 2422B whether any sexual activity actually happened. All that matters is you have the prosecutor proves beyond a reasonable doubt that the defendant knowingly persuaded, induced, coerced, enticed someone he believed to be under the age of 18 to engage in prostitution or some sort of illegal sexual activity. Is there any circuit that disagrees with you on that? I'm sorry? Is there any circuit that disagrees with you on that? In the Ninth Circuit in Tello? I'm not aware of any court that holds that under 2422B you have to actually show that the illegal sexual activity happens and that's somehow incorporated. I'm not aware of any case that says that. And I would also point out the hypothetical that Petitioner brings up that a defendant who's 21 years old and texts his girlfriend who's just about to turn 18 to engage in consensual sexual activity. It doesn't even fall under what 2422B criminalizes. Yes, so the victim, the so-called victim in that case is under 18. Yes. But it doesn't have that knowing persuasion, coercion, inducement, enticement element in that hypothetical. So it doesn't even fall into what 2422B actually criminalizes. And Petitioner doesn't point to any case where there is actually a prosecution under 2422B that applies strictly to that scenario. Petitioner cites Tello. The victim there was a law enforcement officer posing as a 13-year-old. In Kelly, the victim was 16. The defendant was at least 21 because we know that because of other statutes that he was convicted under. Petitioner cites Ogden. The victim was 15 when the offense started in that case and then turned 16. And then in the reply, Petitioner cites Kayaki to make the argument that 2422B would even cover a scenario where a defendant was 18 and texted a 17-year-old to engage in consensual sexual activity. And I'll just point out for the court that the defendant in that case was 29 and the victim was 15. So that doesn't support Petitioner's argument either. And regarding the argument that 2422B does not meet the requirement in sexual abuse of a minor, that it's for a purpose associated with sexual gratification, the government disagrees with that. When you look at these cases and you look at the conversations that are criminalized under the statute, they're not innocent and pure conversations. They're extremely unpleasant conversations to read. There are conversations where the defendant is talking to these children about what their bodies look like, whether they've done certain things to themselves, done things to other people, whether they would agree to do certain things to them. And Petitioner doesn't suggest any reason, and the government cannot think of one, as to how that's not all for a purpose associated with sexual gratification. Let me ask you something just practically. This is a deportation case for removal, and the defendant here has been sentenced to 276 months in prison. What does that mean? That means you take him out of prison and send him back, and he doesn't serve the punishment for the 276? No, he would serve his full federal sentence, and then he would be sent back. So we are talking about once he completes the 276 months?  How many years from now?  Oh, how many years has he been serving now? Yes. That's a really good question, Your Honor. Not long. I don't think it has been. He had quite a bit of time left. So the practical fact, he'll be deported when? 20 years from now? Around that, I would say, yeah, between 15 and 20, to be honest. I can't remember the exact timeline. So the deportation won't happen at all right now? Right now, correct, because he committed this crime here, and yes, he does have to serve his full federal sentence. So he'll be here in the United States in prison for 20 more years, and I suppose it's kind of an odd situation. If you want to remove someone, deport them, who knows what the world is going to be like in 20 years, or longer than 20 years, actually 276 months, and he's not served very long at all. Right. Okay. All right. Yeah. I'm happy to address, you know, there's another issue that could just be. . . It just seems like it's something that could come up later. Sometimes it does. Why do we need to talk about something that's going to happen 20 years from now? Why don't you deport him when he can be deported 20 years from now, and then let him address this? Or I guess because, you know. . . Now, what happens if in 20 years you see the case laws have changed? They're changing in the Fourth Circuit all the time. They're changing on the Supreme Court. And then when he's actually being deported, is he going to be deported under the laws that exist now or the ones that will exist 20 years from now? If between now and when he finishes his federal sentence. . . So my answer, my question is that he will be deported based upon the laws 20 years from now? No, not now. So the laws that will occur before he is deported will not be applicable to him? No, not necessarily, and that's where I was going with my answer. So, yes, this court decides this case. If anything does happen to change, you know, I don't know that, you don't know that. I don't know if anything with regards to these two particular issues will change. But if it does, he can always file a motion to reopen, and he can say there's been a change of law, and I am now no longer removable. I have seen that happen. So in answer to your question, I don't know. November of 2018, and then this action, I guess the conviction then takes place, and then now this comes up 2022. I'm just, I mean, is this a choice on the part of the government to proceed now? Could you do it now or could you do it later? I've seen cases where it happens in a timeline like this, and I have seen cases where people are in prison for whatever the conviction happens to be and removal proceedings happen later. And you don't think that 20 years from now, when this actual deportation is then being processed, if this law is upheld, that there won't be some court action to say, based upon some laws that Congress could have done something totally different 20 years from now, he's no longer in that position? So we're talking about, I guess, conditional deportation or whatever? You're not going to deport him. I mean, if you're not sending anyone away for 20 years, I would call that's not deporting. At least it's maybe in an order saying he will be deported. But why? And what is the law that says if you're in prison and you're being deported, you are not deported now? Could he be deported now? I think that would take a lot of coordination. It would take involvement of the U.S. Attorney's Office, whoever handled this. I imagine the Bureau of Prisons would have to get involved. India would have to agree, I guess. I'm sorry, I didn't hear you. India would have to agree, I guess. Yeah, India would also. He could be put in prison in India. I don't know how that works. That's not an issue in this case. But to answer your question, it's not. Well, that happens a lot. I mean, it happens when an individual is in prison in another country, and they can come here and serve out their sentence, or depending on the countries that are working in it. I mean, it's not a shrugging matter. We are a court here. I doubt I will even be here 20 years from now when this all comes up, and I'm sitting here talking about a deportation that, in my mind, may or may not even happen. It may happen in your mind, but you can't possibly tell what the Congress or what this country is going to be doing in 20, 24 years from now. I just don't get it. I don't understand why you, other than just, I guess, to say he is deportable, he will be deported upon. So there won't be any, I guess this will be, there won't be any subsequent actions against him once he gets out of prison. In other words, he won't be on probation. None of that will happen during that time period. But by then, his family, he has two children who are American citizens. I guess his wife is an American citizen too, will be here. All right. And, you know, we have to answer the question before us. I mean, somebody thinks this is important to do this now, maybe to preserve the evidence because of when it's being done, but it certainly doesn't make sense to me to say, you know, we're going to do something. It's almost like taking you to a regular court for a criminal offense and says, well, he'll go to jail 24 years from now. But whatever he's doing, let him keep doing it until then. And I guess, but you say there's a choice, and that choice is made by the, is it made by your office, solicitor, who makes that choice? Whoever, DHS initiates proceedings, so. And can they go one way or the other on it? They can decide, yes, we're going to do it now, or no, we're not going to do it now? I mean, all I can say is that I have seen cases where someone is convicted and towards the end of the sentence is when removal proceedings are initiated, whether that's because that's when it is discovered that the individual is a non-citizen. You know, I, since I'm not behind the scenes at DHS, I don't know what leads to that. It seems, counsel, I don't want to get, my colleague raises good points, as he always does, but I don't want to get too far away from the discreet question before us, which is whether the 24-22 conviction qualifies as a predicate in these cases and qualifies as a reasonable offense. I don't think we can crystal ball what the, how the consequences are going to spool out one, five, 10, 20 years from now. It's hard to know. At a minimum, we have a good many situations where someone is ruled deportable and someone has also committed a crime for which imprisonment could be imposed. And what it does in these dual situations is it gives the executive branch greater flexibility and options in terms of imprisonment or deportability. And that question is often posed to DOJ as to what route should be taken with respect to which individuals. And I don't know how I can crystal ball it, but, you know, the best I can do is to answer, try to answer conscientiously according to the law the question that's been posed to me. And that's the best I can do. I can't, I don't know. I'm not terribly adept at looking far into the future. I readily concede a greater sense. I want to also make it clear, though, at least for my good colleague here, that the interest here, yes, we do want to look at this law, but when we do things on this court here, you kind of like to know how it really is going to play out. We are looking at the statute as it is now. You've got Thompson that was just handed down, changed the law a little bit, and you've got Ingalls, you've got other cases in here. This is a moving target. It's even on a federal level, it's a moving target. This whole deportation stuff that's going on, I'm not bringing in anything. I'm just saying that it is a legitimate question to ask you, the government that makes a decision of whether to do it now or to do it 23 years ago, what is going into the thought process? And it's a legitimate question to know when he's up for deportation 23 years from now, will the law that we are citing here be applied or will he have the benefit or detriment of the laws that will be in existence then? And it just seems to me that if you want to take an act of deportating someone and it's not going to happen until 23 years from now, for which, as I said, it's a good shot, I won't be around for that, or a lot of other people won't be around for it, but it's a long ways. That's the only purpose of asking the question is, what is the nature of the laws? And yes, we can look at it as it is now, and then we just say, oh, that's it. But 23 years is going to go before anything happens here. He's not going anywhere, as far as I understand, unless somebody lets him out. Maybe he'll get out and then he'll go somewhere. But that's the only purpose of asking the question. I think you've done a good job of bringing it up, and probably like me, you don't really know the answer as to why they do this. So we could. I don't. All I can say is, yes, it's the court's job to apply the law today, and if there is some sort of change, which we don't know, between now and when he is released, once the court issues it, he always has the option to file a motion to reopen if there is some enormous change in law that he believes will alter his removability. He always has that chance. But I don't know. As the law is today, it does bring in the question, well, if you wait 23 years, there are a lot of things that, you know, there are actions that make things stale over time. I mean, I don't know. I'm just saying that's the only purpose. I mean, you don't need to go any further with it. I'm just saying this creates, to me, a question. When the government is standing to me saying deport someone, and it won't happen for 23 years because he's going to serve most of his sentence unless something happens in between there. That's the only reason for bringing that up. I can understand why you bring it up. I can understand this creates a little bit of a different case procedurally than most that are addressed. I didn't see anything like it anywhere else. There's an old bromide called sufficient unto the day. It's not ill-fitting if an individual judge wants to take a modest conception of his or her role. That's no profound pronouncement, but, you know, sometimes sufficient unto the day. Justice Frankfurter had a wonderful comment, and he said, we should not try to do too much lest the future embarrass us. Justice Frankfurter's comment about not be embarrassed by the future by trying to script the future, it may have some applicability here. That is true. It's truly an impossible thing to do, so I don't know what the future's going to bring. But, you know, it also brings in the whole controversy. We don't deal with things unless there's an adversarial situation which you have a controversy at hand. Right now, we don't have a problem. He's going to be in the United States for twenty-three years. The whole purpose of deporting him for twenty-three years won't mean anything. There will come a time when he's released. Then it actually will become something, but right now he's here. But I defer to the greats of Frankfurter and the great Judge Wilkerson. Well, unless your honors have any more questions, I'm much over my time. Thank you very much. All right. We thank you very much. And, Ms. Bacar, we'd be happy to hear from you in rebuttal. You have some rebuttal time. And you won't be asked about that. At least I won't. I have three points for rebuttal, first being that I want to point out that the Supreme Court in Escobar-Quintana engaged in the analysis when it determined what the minimum conduct under the California statute was. And it looked at Congress's intent and came to the conclusion that California statutory rape law was overbroad compared to sexual abuse of a minor in the context of statutory rape. And we asked this court to perform the same analysis to determine that because a defendant can violate Section 2422B for engaging in Internet conversations with an intent to violate a statute like the California statutory rape law at issue in Escobar-Quintana, and it's also facially overbroad. And the actual cases that were brought up, for example, in Tello, show that defendants are convicted under Section 2422B for engaging in Internet conversations with an intent to violate a statute such as the California statute. We do recognize that. It appears to me that Thompson disposes of that very argument, taking the Supreme Court's decision for what it says, that it's basically focused on the differential in age alone as the violation in that the broader scope, which includes mens reas and other aspects of 2422, to distinguish that case and this case. Well, the statute at issue in Thompson had that lascivious intent, a specific intent, and Section 2422B has a more general intent of just the intent to persuade, and that is more similar to the general intent required under statutory rape. And also, the argument that we are making is closer to the Fifth Circuit's decision in Trophy Sessions, where the court found that after Escobar-Quintana, a conviction for online solicitation of a minor in Texas where the age of consent was 17 was overbroad compared to sexual abuse of a minor. And the court found that, or the reason that an online solicitation between an almost 18-year-old and a 21-year-old defendant cannot be categorically, especially egregious conduct in the context of sexual abuse of a minor if actual intercourse between a 17-year-old and 21-year-old is not. And my last comment regarding the crime of child abuse, the example in Cruz explained that the substantial step required for the crime of child abuse is a reasonable probability of harm. And it used the example of a defendant can throw a heavy object and miss a child and it still be considered a reasonable probability, but there still has to be a reasonable probability of harm to a child. Well, that's hardly this statute. This statute talks about inducing a child to engage in sexual activity that would be illegal, and that's hardly throwing a pipe at the child. Your argument, I guess, goes to whether there's child abuse, but it seems to me that child abuse might arise out of that circumstance also, but we don't have that before us. We have a statute that requires that the defendant actually induced the victim to engage in illegal sexual activity, and he was convicted of that. And the question is whether that conviction categorically amounts to child abuse. My question initially out of the gate was, I have not figured out an example why that wouldn't be child abuse. I see my time is up. May I answer your question? Sure. The example that I brought up regarding Cruz, in the context of Section 2422B, there doesn't have to be a child in the vicinity. Defendants are convicted under Section 2422B even if there is no communications with a child, and there's only adult-to-adult communications. Of course, that's the attempt part, right? Yes, and Section 2422B . . . And the actual commission of the crime doesn't involve committing it with an adult. It says committing it with someone under the age of 18, right? Or the attempt to do so. Right. That's another aspect. Yes, and under the categorical approach, we have to look at the minimum conduct, which includes the adult-to-adult communications. Thank you. Thank you. Thank you very much. I want to say how much we appreciate always having student counsel here, and you've done a fine job, and we really appreciate it. We'll come down and greet counsel and move into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, James Andrew Wynn